**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARTIN S. PARNESS, | : | |
| Plaintiff, | : | Civil Action No. 15-2397 (JLL) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ESSEX COUNTY CORRECTIONAL | : | |
| FACILITY, et al., | : | |
| Defendants. | : | |
| | : | |

**LINARES**, District Judge:

Plaintiff, Martin Parness, filed a complaint against Defendants in the Southern District of New York on February 18, 2015. (ECF No. 1, 2). The Southern District transferred this matter to the District of New Jersey on April 1, 2015. (ECF No. 5, 6). On June 2, 2015, this Court granted Plaintiff's application to proceed *in forma pauperis*. (ECF No. 9). At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set out below, this Court will permit Plaintiff's claim for deliberate indifference to medical needs to proceed at this time, but will dismiss that claim with prejudice as to the Essex County Correctional Facility. Plaintiff's remaining claims will be dismissed without prejudice as to all Defendants.

## I.  BACKGROUND

Plaintiff, William Parness, is an individual currently incarcerated in the Essex County Correctional Facility.[1]  (ECF No. 2 at 11).   Plaintiff's claims all arise out of the dental treatment, or lack thereof, which he received during his incarceration in Essex County.   At some point after his initial incarceration in 2009, but prior to January 2013, Plaintiff filled out a sick call request ("SCR") form requesting to be seen by a dentist.  (*Id.*).   At that time, Plaintiff was seen by an unknown female dentist who provided Plaintiff with a temporary fix for a cavity to one of his tooth, but informing Plaintiff that she could not perform a proper filling as she was missing certain necessary materials which would soon arrive.  (*Id.*).   After providing the temporary filling, the dentist informed Plaintiff that it "should hold."  (*Id.*).   When asked to explain that statement, Plaintiff was told that the clinic at the jail only did "as much to make one comfortable" as it was not a private clinic.  (*Id.*).   Plaintiff also asserts that, when reporting his dental issues, he was asked when he would be leaving, as the dental clinic would apparently not prioritize the issues of those soon to be released.  (*Id.* at 12).

On October 4, 2012, Plaintiff filled out another SCR after one of his fillings had fallen out of his teeth.  (*Id.*).   Petitioner was brought to see Dr. Gertzman.  (*Id.*).   Gertzman told Plaintiff that if the tooth was not causing him pain and was not bothering him, the clinic would not fill the cavity.  (*Id.*).   After Plaintiff apparently expressed his exasperation with the situation, Gertzman

---

[1] Plaintiff claims that he was "illegally arrested and [has] been illegally incarcerated since April 2009." (ECF No. 2 at 11).  Plaintiff does not elaborate further in this complaint.  Plaintiff, however, filed another complaint in April 2015 which has since been transferred to this Court in which he makes it clear that he is currently incarcerated for his failure to pay an allegedly fraudulent judgment owed his ex-wife arising out of their divorce.  (*See Parness v. Christie*, Civil Action No. 15-3505, ECF No. 1 at 13).

told him that Motrin could be provided if pain resulted, and that antibiotics would be given in the event that an infection arose. (*Id.*). Gertzman allegedly also told Plaintiff that she could either pull his teeth or make him comfortable, but could do no more for him. (*Id.*). Gertzman apparently further elaborated and informed Plaintiff that the contract between her employer, Defendant CFG Health Systems, and Essex County did not call for the filling of cavities, root canals, or the installation of caps and crowns. (*Id.* at 13).

Plaintiff filled out another SCR on October 24, 2012, again asserting that his filling had fallen out and that he was suffering pain as a result. (*Id.*). Plaintiff was seen by Dr. Gertzman on November 26, 2012. (*Id.*). The dentist ordered an X-ray of the tooth, after which Gertzman told Plaintiff that the tooth and nerve were dead and needed to be pulled. (*Id.*). Plaintiff refused, and demanded that he be given a prescription for pain killers, but was told that he could only be given Motrin or Tylenol. (*Id.*). Plaintiff also insisted that he be taken to the University of Medicine and Dentistry of New Jersey in Newark for a second opinion. (*Id.* at 14). Dr. Gertzman, however, refused that request. (*Id.*). She then informed Plaintiff that he would be called back in a week. (*Id.*).

Plaintiff received no such call back, and therefore filled out further dental SCRs on December 12, 2012, and January 5, 2013, requesting help with "two teeth that require fillings immediately[, t]hree teeth that require root canal[s] and caps, and one broken tooth that may require root canal and caps." (*Id.*). Plaintiff also again insisted on being taken to the University for a second opinion. (*Id.*). On January 8, 2013, Plaintiff filled out an additional SCR asserting that his lower jaw hurt and that he had cavities and five molars in need of attention. (*Id.* at 15). Plaintiff thereafter made an additional SCR request on January 18, 2013, again asserting jaw pain

3

and painful cavities. (*Id.*). After receiving no response, Plaintiff wrote a memo to Defendant Hendricks and the jail's Internal Affairs unit detailing his negative experience with the dentistry clinic and reiterating the interactions relayed above. (*Id.* at 15-18). In the memo Plaintiff apparently also relayed his belief that his treatment was the result of an unwritten jail policy not to provide full dental care but to instead only pull teeth once the teeth had become beyond help, and thereby save money on the supplies necessary to fill cavities or perform root canals. (*Id.*).

Plaintiff's memo apparently received no response, and he thereafter filled out another SCR on February 12, 2013. (*Id.* at 18). Again, Plaintiff insisted he receive fillings for several of his teeth, and that he be taken to UMDNJ "if the personnel at the jail are not capable." (*Id.*). On April 22, 2013, Plaintiff repeated his request for treatment of his molars in an additional SCR seeking a referral to UMDNJ. (*Id.* at 18-19). Plaintiff elaborated in further SCRs on May 3 and May 7, 2013, in which he asserted that his molars were decaying "at an alarming rate," that his gums were bleeding, that he was suffering jaw and headache pain, and that he had "a cavity that goes up through to the nose . . . that . . . may be infected which may be [a]ffecting [his] hearing." (*Id.* at 19).

Plaintiff was seen by Dr. Gertzman in the dental clinic on May 15, 2013. During that visit, Plaintiff was told that the CFG contract did not permit referrals to UMDNJ. (*Id.*). When Plaintiff again insisted he be given a referral, Dr. Gertzman refused as "she was in charge and she would not allow a consult." (*Id.*). Gertzman, however, also informed Plaintiff that she had put in a request to Dr. Anicette, her supervisor within CFG, to have Plaintiff seen at UMDNJ, but that request had apparently been denied. (*Id.* at 20). Plaintiff again insisted that he be given prescription medication for the pain in his teeth, but Gertzman again told him she could only

4

provide him with Motrin or Tylenol. (*Id.*). It is unclear what actual dental treatment may have been performed during this visit.

On July 15, 2013, Plaintiff submitted a further SCR, claiming that two of his lower right teeth needed attention, and that he had gumline cavities requiring treatment. (*Id.*). Plaintiff submitted an additional SCR on July 27, 2013, claiming that the issue had developed to the point that the right side of his face had become swollen. (*Id.*). This swelling was apparently the result of an infection of Plaintiff's teeth, and was treated by regular medical staff through the use of intravenous antibiotics. (*Id.*). Plaintiff was apparently seen by Gertzman again the following day, who told Plaintiff his right upper incisor would need to be pulled. (*Id.*). Plaintiff again refused to have any teeth pulled and demanded he be sent to UMDNJ as other inmates had been. (*Id.*). Dr. Gertzman refused that request. (*Id.*). Plaintiff thereafter requested that the correctional officers move him to the medical ward, but that request did not result in his transfer. (*Id.*).

On July 31, 2013, Plaintiff filled out an additional SCR. (*Id.* at 21-22). In the request for treatment, Plaintiff relayed the information regarding his infection and Gertzman's earlier refusal to fill any cavities, which Plaintiff asserted was the cause of his current problems. (*Id.* at 22). Plaintiff again requested to be sent to UMDNJ. (*Id.*). Although no trip to medical apparently resulted from that request, the intravenous antibiotics alleviated both Plaintiff's tooth pain and infection after approximately one week. (*Id.*).

Several months later, on October 20, 2013, Plaintiff again submitted an SCR. (*Id.*). This time, Plaintiff claimed that his lower right tooth needed a filling urgently, and claimed that Dr Gertzman had improperly assessed the tooth to have a dead nerve and to therefore require pulling.

5

(*Id.*).   Plaintiff filled out an additional request on December 29, 2013, adding that his right molar had split in half and his upper left tooth had broken, leaving him in need of "pain relief."   (*Id.*). On January 16, 2014, Plaintiff submitted a further SCR, noting that it had been several weeks[2] since his last request and he had not been seen, despite his ongoing dental issues.   (*Id.* at 22-23). Plaintiff also made copies of this request form and submitted those copies to both Defendants Hendricks and Anicette.   (*Id.* at 23).   Plaintiff subsequently, on January 30, 2014, submitted a memorandum to Hendricks and Anicette reiterating his complaints regarding dental treatment at the jail.   (*Id.* at 23).

On January 27, 2014, Plaintiff was called to the dental unit and seen by Dr. Gertzman.   (*Id.* at 23-24).   After an X-ray, the dentist offered Plaintiff Motrin or Tylenol for his pain and informed him that as she could not perform a root canal, six of his teeth would need to be pulled.   (*Id.* at 24-25).   Plaintiff refused, and once again insisted he be taken to UMDNJ for a second opinion. (*Id.* at 25).   Plaintiff asserts that he again asked whether the dental clinic would fill his cavities, and received "when will you be going home" as a response.   (*Id.*).   Dr. Gertzman allegedly told Plaintiff that if he wanted a root canal or caps, he would need to wait until he left the jail, as the jail's contract did not call for those forms of treatment.   (*Id.*).   Dr. Gertzman then had Plaintiff sign a form noting his refusal to have his teeth pulled.   (*Id.*).   Gertzman then apparently filled a single gum line cavity on one of Plaintiff's teeth.   (*Id.*).   Although he had initially refused, Plaintiff ultimately allowed his seven teeth to be pulled by an oral surgeon on February 12, 2014.

---

[2] Plaintiff states that in his January 16 SCR he stated that his previous request had been made on December 16, 2013.   (ECF No. 2 at 22).   His own pleadings, however, give the previous request a date of December 29, 2013.   (*Id.*).

(*Id.* at 26-27).

## II.  DISCUSSION

### A.  Legal Standard

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which the plaintiff is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.   This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) as Plaintiff is proceeding *in forma pauperis*.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   To survive *sua sponte* screening for failure to state a claim,[3] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.   *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

[3]      "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."   *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).   Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."   *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

## B.  Plaintiff's RICO and Fraud Claims

Plaintiff first asserts civil claims against Defendants for violations of the Racketeer Influenced and Corrupt Organization ("RICO") Act.   18 U.S.C. § 1962(c) "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'"   *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). Section 1962(d) expands liability under the statute by making it "unlawful for any person to conspire to violate [18 U.S.C. § 1962(c)]".   18 U.S.C. § 1962(d).   "The RICO statute provides for civil damages for any person injured in is business or property by reason of a violation of [§ 1962]."   *Amos v. Franklin Fin. Servs. Corp.*, 509 F. App'x 165, 167 (2013) (quoting *Tabas v. Tabas*, 47 F.3d 1280, 1289 (3d Cir. 1995)).

A violation of the statute

> requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.   The plaintiff must, of course, allege each of these elements to state a claim.   Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is the mere commission of the predicate offenses.   In

8

> addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.

*Id.* Physical or emotional harm to a person is insufficient to show that a person was injured in his business or property under the act. *Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 227 (3d Cir. 2007). "Similarly, losses which flow from personal injuries are not [damage to] property under RICO." *Id.* (internal quotations omitted).

A pattern of racketeering activity "is established by showing that the defendants engaged in at least two predicate acts within ten years of each other." *Amos*, 509 F. App'x at 168. Included among potential predicate acts are "federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343." *Id.* "[M]ail or wire fraud consists of: '(1) a scheme to defraud; (2) use of the mails [or wires] to further that scheme; and (3) fraudulent intent.'" *Id.* (quoting *United States v. Pharis*, 298 F.3d 228, 234 (3d Cir. 2002)). No defendant can be found liable under RICO unless he participated in "two or more predicate offenses sufficient to constitute a pattern." *Id.* (quoting *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990)).

Where the alleged predicate acts asserted include mail or wire fraud, a plaintiff must meet the heightened pleading requirements of Rule 9(b) in order to state a claim for relief. *CareOne, LLC v. Burris*, Civil Action No. 10-2309, 2011 WL 2623503, at *8 (D.N.J. June 28, 2011); *see also Waden v. Mcelland*, 288 F.3d 105, 114 (3d Cir. 2002). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In order to satisfy this pleading requirement, a plaintiff must "identify[] the purpose of the [mailing or use of wires] within the defendant's fraudulent scheme and specify[] the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentation." *Burris*, 2011 WL 2623503 at

*8 (quoting *Annulli v. Panikkar*, 200 F.3d 189, 200 n. 10 (3d Cir. 1999), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000)).  A plaintiff pleading fraud must therefore allege the "who, what, when, and where details of the alleged fraud" in order to meet the requirements of Rule 9.  *District 1199P Health and Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 527 (D.N.J. 2011).  "'The purpose of Rule 9(b) is to provide notice of the precise misconduct with which defendants are charged' in order to give them an opportunity to respond meaningfully to the complaint, 'and to prevent false or unsubstantiated charges.'"  *Id.* (quoting *Rolo v. City of Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998)).  A plaintiff must therefore allege "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Plaintiff alleges that Defendants Anicette, Gertzman, Divincenzo, Ortiz, Hendricks, and John Does 1-15 knowingly and intentionally engaged in a RICO conspiracy or, as Plaintiff asserts in Counts three and four of his complaint, aided and abetted that conspiracy whose intent was apparently to profit by refusing to provide full dental care to Plaintiff and other prisoners in the Essex County Correctional Facility.  (ECF No. 2 at 40-42).  To support his assertion that Defendants engaged in acts which would establish a civil RICO claim, Plaintiff asserts that Defendants engaged in numerous acts of wire or mail fraud by mailing or wiring the contract between the facility and CFG Health Systems through which CFG provided dental services to the facility.  (ECF No. 2 at 42).  Plaintiff further alleges that further acts of mail or wire fraud

occurred when Defendants mailed or sent the various purchase orders for dental supplies.  (ECF No. 2 at 42-46).   In so asserting, Plaintiff asserts that these purchase orders, whose dates he does not know, would have numbered at least sixteen if sent quarterly or at least forty eight if sent monthly to the facility.  (ECF No. 2 at 45).   In so asserting, Plaintiff inadvertently establishes that he has provided no information as to who specifically sent the orders and/or contract, where or to whom they were sent, what information was contained in those orders, or how that information was false other than to speculate that the orders did not request sufficient supplies to treat all dental needs within the facility.   Indeed, Petitioner's statements establish that he doesn't know, and therefore has failed to allege, how many of the alleged documents exist, or how frequently they are produced.  Plaintiff provides no more than speculation, and certainly no particular details as to any alleged fraud that may have been contained within the contract or purchase orders.  As Plaintiff has not properly pled the "who, what, when, and where details of the alleged fraud," he has failed to plead fraud with particularity, and has therefore not met the pleading requirements of Rule 9(b).  *District 1199P Health and Welfare Plan*, 784 F. Supp. 2d at 527.   As such his RICO claims, and the related fraud claims, must be dismissed without prejudice for failure to state a claim for which relief can be granted.  *Id.*

        Additionally, this Court notes that Plaintiff has not sufficiently pled damage to his business or property.   Petitioner's alleged damages arise entirely out of the decay and loss of certain teeth as a result of the allegedly insufficient dental treatment provided at the Essex County facility.   As such, he has pled only personal injury damages and damages which flow from personal injury, neither of which are sufficient to support a RICO claim, and neither of which are sufficient to provide Plaintiff with standing to bring such a claim.  *Amos*, 509 F. App'x at 167; *Magnum*, 253

11

F. App'x at 227.   Thus, even had Plaintiff pled fraud with sufficient particularity, he would lack standing to bring a civil RICO claim based upon the allegations contained in his complaint. Petitioner's civil RICO claims, and the related fraud aiding and abetting claims, will therefore be dismissed without prejudice.

## C.   Plaintiff's 42 U.S.C. § 1983 Claims

Plaintiff seeks to sue Defendants for violations of his Fourteenth Amendment rights.   42 U.S.C. § 1983 provides "private citizens with a means to redress violations of federal law committed by state individuals."   *Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013).   To assert a claim under the statute, a plaintiff must show that he was a deprived of a federal constitutional or statutory right by a state actor.   *Id.*   When evaluating the merits of a § 1983 claim, the Court must identify the contours of the underlying right Plaintiff claims was violated and determine whether Plaintiff has successfully alleged a violation of that right.   *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).

Here, Plaintiff brings claims against all Defendants for deliberate indifference to his medical needs under the Fourteenth Amendment to the United States Constitution.[4]   Although this Court discerns no basis to dismiss this claim at this time as to most Defendants, Plaintiff's §

---

[4] Depending on one's status, as either a convicted prisoner or an un-convicted, most often pre-trial, detainee, a claim for deliberate indifference arises out of one's Eighth or Fourteenth Amendment rights respectively.   *See King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008).   As Petitioner does not appear to have been convicted of a crime based on the information currently available, his claim would arise under the Fourteenth Amendment.   As the Fourteenth Amendment standard is at least as strict as that considered under the Eighth Amendment, this Court's opinion would be no different were Petitioner a convicted prisoner. *Id.*

1983 claims against the Essex County Correctional Facility must be dismissed.  As this Court
recently explained:

> A County jail . . . is not a person amenable to suit under the statute.
> *See Kitchen v. Essex Cnty. Corr. Facility*, No. 12-2199, 2012 WL
> 1994505, at *3 (D.N.J. May 31, 2012); *Ingram v. Atl. Cnty. Justice
> Facility*, No. 10-1375, 2011 WL 65915, at *3 (D.N.J. Jan. 7, 2011);
> *see also Marsden v. Federal B.O.P.*, 856 F. Supp. 832, 836
> (S.D.N.Y. 1994); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758
> (N.D. Ill. 1993); *McCoy v. Chesapeake Corr. Cntr.*, 788 F. Supp.
> 890, 893-894 (E.D. Va. 1992).  The correct entity subject to suit
> under § 1983 for claims against the jail would be the county which
> operates the facility.  See *Kitchen*, 2012 WL 1994505; *Vance v.
> Cnty. Of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) (the
> county "Department of Corrections is an agency of the County . . .
> [t]he County is a proper defendant in a § 1983 claim, an agency of
> the County is not").

*Harris v. Hudson Cnty. Jail*, No. 14-6284, 2015 WL 1607703, at *5 (D.N.J. April 8, 2015).  As
the Essex County Correctional Facility serves as the county jail for Essex County, it is not a person
amenable to suit under § 1983.  The Correct defendant would instead be Essex County itself,
which Plaintiff has named as a defendant.  Plaintiff's § 1983 claim against the Essex County
Correctional Facility must therefore be dismissed with prejudice.  *Id.*

Plaintiff also attempts to assert a claim for First Amendment retaliation under § 1983.  .
"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1)
constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary
firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally
protected conduct and the retaliatory action."  *Thomas v. Independence Twp.*, 463 F.3d 285, 296
(3d Cir. 2006).  The central question required to determine whether a First Amendment retaliation
claim is cognizable is "whether 'the alleged retaliatory conduct was sufficient to deter a person of

13

ordinary firmness from exercising his First Amendment rights.'"   *Id.* (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)).   As a threshold matter, Plaintiff is required to identify the protected activity that he alleges spurred a defendant to retaliate against him.   *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013); *Eichenlaub v. Twp. Of Indiana*, 385 F.3d 274, 282 (3d. Cir. 2004).

As to the retaliation claim, Plaintiff alleges that Dr. Gertzman retaliated against him for the filing of grievances against her.   Although the filing of a grievance is a protected activity which can be the subject of a plausible retaliation claim, *see Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003), Plaintiff does not allege what specific grievance he may have filed against Dr. Gertzman. Plaintiff certainly filed many Sick Call Requests related to his dental treatment, and on two or three occasions appears to have written letters and memos to Warden Hendricks and Dr. Anicette about his treatment, but his complaint is otherwise devoid of any allegations regarding any filed grievances.   Even assuming that these letters and SCRs are sufficiently similar to the grievances in *Horn* to be considered a protected activity, Plaintiff doesn't plead sufficient retaliatory conduct. As to retaliatory conduct, Plaintiff pleads only that Gertzman refused to provide him with prescription strength pain medication, and refused to send him to UMDNJ.   The problem with those allegations serving as retaliation is that Gertzman had already engaged in those behaviors in regard to Plaintiff *before* he began his flurry of SCRs and letters.   Plaintiff's own allegations serve to refute his claim: the alleged retaliatory conduct arose before the protected activity, not in response to it, and therefore to the extent that that activity could be said to harmful, it was not taken in retaliation to Plaintiff's reports.   Even were that not the case however, it is questionable at best whether refusing to provide an outcall or offer prescription strength pain medication, as opposed to the Tylenol and Motrin Gertzman frequently offered to Plaintiff even after he began to

14

complain, would be sufficient to deter a person of ordinary firmness. Clearly, these actions did not deter Plaintiff from continuing to pursue his desired course of dental treatment. Dr. Gertzman did not threaten nor attack Plaintiff, but rather refused him an outpatient referral and did not give him pain medication stronger than Motrin or Tylenol, neither of which are actions Plaintiff has clearly alleged were within Gertzman's power to grant. Indeed, Plaintiff's pleadings suggest that Gertzman specifically told him that those actions were beyond her authority. Because Plaintiff has not properly alleged that Gertzman's actions were in retaliation to his alleged protected conduct, and because he has not alleged that the "retaliation" was sufficiently severe to deter a person of ordinary firmness, Plaintiff's First Amendment retaliation claim will be dismissed without prejudice. *Iqbal*, 556 U.S. at 678; *Thomas*, 463 F.3d at 296.

## D. Plaintiff's Intentional Infliction of Emotional Distress and Remaining State Law Claims

Plaintiff also seeks to bring a state law claim for intentional infliction of emotional distress against Defendants. In order to plead a cognizable claim for intentional infliction of emotional distress under New Jersey law, a plaintiff must allege that the defendant intended to cause emotional distress, engaged in conduct that was extreme and outrageous, that this conduct proximately caused emotional distress to Plaintiff, and that the emotional distress was severe. *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001); *see also Smart v. Santiago*, Civil Action No. 15-1065, 2015 WL 2226207, at *6 (D.N.J. May 12, 2015); *Taylor v. Metzger*, 706 A.2d 685, 694-97 (N.J. 1998). In order to be extreme and outrageous, a defendant's conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Taylor*, 706 A.2d at 694 (internal quotations omitted).   As to intent, a plaintiff must show that the defendant acted intentionally or recklessly "both to do the act and to produce emotional distress." *Id.* at 696.   Finally, in order to be actionable, the emotional distress must be "so severe that no reasonable person could be expected to endure it." *Id.* (internal quotations omitted).   Complaints which allege "nothing more than aggravation, embarrassment, an unspecified number of headaches, and loss of sleep" are therefore insufficient to support a claim of intentional infliction of emotional distress. *Id.* (internal quotations omitted).   Cognizable claims result from emotional distress that amounts to "severe and disabling emotional or mental condition[s] which may be generally recognized and diagnosed . . . including . . . posttraumatic stress disorder." *Id.* (internal quotations omitted).

Here, Plaintiff alleges that Defendants, in their mistreatment of Plaintiff's dental issues, engaged in extreme or outrageous conduct intentionally designed to inflict emotional distress which resulted in Plaintiff's embarrassment, humiliation, and ridicule as a result of his lost teeth. This Court doubts whether the conduct involved, eschewing the use of fillings and root canals in favor of pulling teeth and offering over the counter medicine, is so severe and outrageous to support Plaintiff's claim.   Regardless, even if this Court assumes that the conduct is sufficiently outrageous, Plaintiff's allegations suffer from two further flaws.   First, Plaintiff's allegations are that the policy not to provide fillings was intentionally designed and used to inflict emotional distress.   Such a claim is dubious at best, asserting that a blanket policy was intentionally designed and implemented to cause emotional distress rather than to save money, as Plaintiff alleges elsewhere in his complaint.   More problematic for Plaintiff, however, is the second issue: the emotional distress he alleges is no more than the kind of aggravation, embarrassment and fear of

16

ridicule that the New Jersey Supreme Court has established is patently insufficient to support a claim for intentional infliction of emotional distress. *Id.* As such, even if this Court were to assume that Plaintiff has alleged both outrageous conduct and that Defendants acted intentionally to cause Plaintiff distress, Plaintiff has not alleged a sufficiently severe emotional or mental injury to support the conclusion that his claim is plausible. As such, his claim must be dismissed without prejudice.

Finally, Plaintiff provides a blanket assertion that, in addition to the specifically pled claims discussed here, Plaintiff wishes to allege multiple claims under either "N.Y. State law and/or N.J. State law." (ECF No. 2 at 75). Plaintiff does not specify, let alone plead, any claims beyond those discussed above.[5] To the extent that Plaintiff wishes to bring any other state law claims, he must plead those claims in an amended complaint, and may not merely assert that he has additional claims. *See Iqbal*, 556 U.S. at 678.

---

[5] While Plaintiff's complaint contains several more counts, each is an extension of his § 1983 claims, specifying alternative theories for the liabilities of the supervisory Defendants. This Court construes those counts to be part of Plaintiff's previously discussed medical claim under § 1983.

17

## III. CONCLUSION

For the reasons stated above, Plaintiff's claim for deliberate indifference to medical needs pursuant to 42 U.S.C. § 1983 will be permitted to proceed at this time, although that claim will be dismissed with prejudice against the Essex County Correctional Facility.   Plaintiff's remaining claims are all dismissed without prejudice as to all Defendants.   An appropriate order follows.

Hon. Jose L. Linares, U.S.D.J.
April 26 , 2016

18